**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
─────────────────────────────────────

JAKIM GRIMES,

                              Petitioner,

              v.                                              9:19-CV-1336
                                                             (GTS/CFH)

TERESA TYNON,

                      Respondent.
─────────────────────────────────────


**APPEARANCES:**                          **OF COUNSEL:**

JAKIM GRIMES
Petitioner, pro se
17-B-3065
Washington Correctional Facility
Box 180
Comstock, New York 12821

HON. LETITIA JAMES                          PRISCILLA STEWARD, ESQ.
Attorney for Respondent                     Assistant Attorney General
New York State Attorney General
The Capitol
Albany, New York 12224

**CHRISTIAN F. HUMMEL**
**United States Magistrate Judge**


## REPORT-RECOMMENDATION and ORDER

### I.    INTRODUCTION

Petitioner Jakim Grimes seeks federal habeas corpus relief pursuant to 28

U.S.C. § 2254.  Dkt. No. 1, Petition ("Pet.").  Respondent opposes the petition.  Dkt. No.

17, Response; Dkt. No. 17-1, Memorandum of Law in Opposition; Dkt. No. 17-3, State

Court Record ("SR"); Dkt. No. 17-4, Transcript ("T").  Petitioner filed a reply.  Dkt. No.

19, Traverse.  For the reasons discussed below, the undersigned recommends denying and dismissing the petition.

## II.    BACKGROUND

On June 1, 2011, Syracuse Police Department officers conducted a traffic stop of a vehicle after observing the vehicle pull away without signaling.  SR at 90 (police incident report).[1]  Police detected an odor of marijuana coming from the vehicle.  *Id*.  A check of the license plate revealed the vehicle's driver had an active arrest warrant, and the officers arrested the driver.  *Id*.  The officers asked the two remaining passengers, one of whom was identified as Petitioner, to exit the vehicle.  *Id*.  An officer asked to conduct a search of Petitioner's person, and he provided verbal consent.  *Id*.  Police discovered a clear plastic bag containing a beige chunky substance, and Petitioner revealed an additional bag containing a green/brown plant-like material.  *Id*.  Police administered a test kit and identified the chunky beige substance as containing cocaine.  *Id*.  Petitioner also possessed multiple cell phones and $350.00 US currency.  *Id*.  Petitioner was arrested and transported to booking.  *Id*.

Petitioner was indicted by grand jury for criminal possession of a controlled substance in the third degree in violation of Section 220.16(1) of New York Penal Law and criminal possession of a controlled substance in the fourth degree in violation of Section 220.09(1) of New York Penal Law.  SR at 32.  The grand jury found that on June 1, 2011, Petitioner "knowingly and unlawfully possessed one or more

---

[1] All citations to the parties' submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system, located at the header of each page.

preparations, compounds, mixtures or substances containing a narcotic drug . . . of an aggregate weight of one-eighth ounce or more, to wit: cocaine." *Id.*[2]

On January 5, 2012, Petitioner, represented by counsel, entered a plea of guilty to the charges of third- and fourth- degree criminal possession of a controlled substance. T at 233-42 (transcript of plea hearing). On March 2, 2012, Petitioner was sentenced to a six-year determinate sentence plus one and a half years of post-release supervision. T at 243-48 (transcript of sentencing hearing).

Petitioner appealed from the judgment. *See People v. Grimes*, 20 N.Y.S.3d 261 (4th Dept. 2015).[3] On November 13, 2015, the Appellate Division, Fourth Judicial Department, unanimously affirmed the conviction. *Id*. The People served a notice of entry of the Appellate Division's decision on Petitioner on November 17, 2015. SR at 179. In a letter dated November 20, 2015, Petitioner's counsel informed him "[counsel was] in the process of drafting the leave application to the court of appeals and [Petitioner] should receive it shortly." SR at 185.

New York law requires appellants to apply for a certificate granting leave to appeal to the Court of Appeals "[w]ithin thirty days after service . . . of a copy of the order sought to be appealed[.]" N.Y. CRIM. PRO. LAW § 460.10(5)(a) (hereinafter "CPL").[4] Under the CPL, the court may extend the deadline to file an application for leave to appeal by thirty days, however, "[s]uch [a] motion must be made with due

---

[2] Petitioner had previously been charged with criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree following an arrest on March 15, 2011. *See* SR 34 (Indictment No. 2011-0328-1); SR 96 (police incident report). Following a series of pretrial hearings, the People moved to dismiss this indictment on December 20, 2011, and the court ordered the indictment dismissed pursuant to CPL Section 210.20(1)(h). T at 224-27.

[3] A copy of the Fourth Department's decision is included in the state court records. *See* SR 166-67.

[4] Petitioner was required to apply for leave to appeal to the Court of Appeals by December 17, 2015 – 30 days after service of the Appellate Division's decision.

diligence after the time for the taking of such appeal has expired, and in any case not more than one year thereafter." *Id.* § 460.30(1).[5]  The record contains a letter application from Petitioner's counsel to the Court of Appeals, dated November 20, 2015, seeking leave to appeal the Fourth Department's decision; however, the application was not timely filed.  *See* SR at 215-19.

On January 9, 2017, Petitioner wrote to his counsel inquiring about the status of his leave to appeal.  SR at 205 (affirmation of Phillip Rothschild); Dkt. No. 1-1 at 8. After receipt of Petitioner's letter, counsel discovered the application for leave had not been filed.  *See* SR at 205.

On January 20, 2017, a counseled application for coram nobis relief was filed on Petitioner's behalf, seeking an extension of time to file an application for leave to appeal to the Court of Appeals.  SR at 168-85.  In an affirmation in support of Petitioner's motion, counsel explained "[u]nfortunately, due to law office failure and [his] lack of oversight, [the November 20, 2015] application [for leave to appeal to the Court of Appeals] was never timely filed and served and the case was later mistakenly marked as closed."  *Id.* at 205.  Counsel averred "[o]nly upon receipt of [Petitioner's] letter of January 9, 2017, . . . was the failure to file the leave application discovered."  *Id*.

On March 24, 2017, the Appellate Division, Fourth Department, denied Petitioner's application for coram nobis.  *People v. Grimes*, 49 N.Y.S.3d 326 (4th Dept. 2017).[6]  Thereafter, Petitioner timely sought leave to appeal the denial.  SR 188-90. The Court of Appeals granted leave to appeal.  *People v. Grimes*, 29 N.Y.3d 1127

---

[5] One year after the deadline for Petitioner to file an application for leave was December 17, 2016.
[6] A copy of the Fourth Department decision is included in the state court records.  *See* SR at 186.

4

(2017).[7]  On October 23, 2018, the Court of Appeals affirmed the Fourth Department's

denial of relief.  SR 327-72; *People v. Grimes*, 32 N.Y.3d 302, 115 N.E.3d 587, 91

N.Y.S.3d 315 (2018).[8]  Judges Stein, Fahey, Garcia, and Feinman concurred with Chief

Judge DiFiore's opinion; Judge Wilson wrote a dissent, with which Judge Rivera

concurred.  SR 327-48 (majority opinion); 349-72 (dissenting opinion).

### III.    PENDING PETITION

Petitioner, pro se, filed the instant petition for a Writ of Habeas Corpus on

October 11, 2019.  *See* Pet. at 22.[9]  Petitioner challenges his 2012 judgment of

conviction, in Onondaga County, upon a guilty plea of third- and fourth- degree criminal

possession of a controlled substance.  *Id.* at 1-2.  Petitioner argues that he is entitled to

federal habeas relief because his attorney's failure to file a timely leave application

constituted ineffective assistance of appellate counsel (Pet. at 7-8; Dkt. No. 1-1 at 10-

21); Supreme Court, Onondaga County erred in denying Petitioner's motion to suppress

physical evidence obtained as a result of the June 1, 2011, search of Petitioner's person

(Pet. at 10-12; Dkt. No. 1-1 at 21-25); and he was improperly adjudicated as a second

felony drug offender at sentencing (Pet. at 14-15; Dkt. No. 1-1 at 25-28).

Respondent first argues the petition should be dismissed as untimely because it

was filed after the statutory limitations period expired, and it does not qualify for

equitable tolling.  Dkt. No. 17-1 at 10-15.  In response to the timeliness issue, Petitioner

---

[7] A copy of the Court of Appeals' decision is included in the state court records.  *See* SR at 192.

[8] A copy of the Court of Appeals' decision is included in the state court records.  *See* SR at 327-72.

[9] Under the prison "mailbox rule," a petitioner's application is deemed filed on the date he delivers it to the prison authorities for mailing.  *Houston v. Lack*, 487 U.S. 266, 270 (1988).  Petitioner declares that he placed the petition in the prison mailing system on October 11, 2019.  Pet. at 22.

contends "extraordinary circumstances" prevented him from timely filing the petition, therefore, equitable tolling applies.  Dkt. No. 19 at 7-10.

Respondent further argues Petitioner's ineffective appellate counsel claim is unexhausted and plainly meritless (Dkt. No. 17-1 at 15-17); Petitioner's Fourth Amendment claim is unexhausted, procedurally defaulted, and barred from habeas review under *Stone v. Powell* (Dkt. No. 17-1 at 17-20); and Petitioner's challenge to his adjudication as a second felony drug offender is unexhausted and procedurally defaulted, barred from review on independent and adequate state law grounds, and not cognizable on habeas review (Dkt. No. 17-1 at 20-24).  In response to these arguments, Petitioner contends his ineffective assistance of appellate counsel claim was properly exhausted and is meritorious (Traverse at 11-13); his Fourth Amendment claim is not barred from habeas review (Traverse at 14); and his challenge to his adjudication as a second felony drug offender was properly exhausted and not barred from review (Traverse at 15-16).

## IV.    DISCUSSION

### A.  Timeliness of the Petition

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for prisoners to seek federal review of their state court criminal convictions.  28 U.S.C. § 2244(d)(1).  The one-year period generally begins to run from the latest of several events: the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review; the date on which an unconstitutional, state-created impediment to filing a habeas petition is removed; the date on which the Supreme Court initially recognized

the constitutional right on which the petitioner bases his habeas application if that right was newly recognized and made retroactively applicable; or the date on which the petitioner could have discovered the factual predicate for the claim or claims presented through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1)(A)-(D); *Gonzalez v. Thaler*, 565 U.S. 134, 148-54 (2012).

The limitations period is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]"  28 U.S.C. § 2244(d)(2); *see Saunders v. Senkowski*, 587 F.3d 543, 548 (2d Cir. 2009).  However, state collateral proceedings do not toll the one-year statute of limitations when those proceedings were filed after the expiration of the deadline.  *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (holding "proper calculation of [the] tolling provision excludes time during which properly filed state relief applications are pending[,] but does not reset the date from which the one-year statute of limitations begins to run.").  Alternatively, "[a] petitioner who has filed a petition past the one-year statute of limitation[s] and does not have sufficient statutory tolling may still have his petition considered through equitable tolling." *Levola v. New York State Div. of Parole*, No. 9:12-CV-1185 (GTS/CFH), 2014 WL 2106294, at *8 (N.D.N.Y. May 20, 2014).[10]

### 1.  Equitable Tolling

Petitioner received notice of entry of the Appellate Division's decision on his direct appeal on November 17, 2015.  SR at 179.  To continue his direct appeal, Petitioner was required to apply for leave to appeal to the New York Court of Appeals within thirty days.  *See* CPL § 460.10(5)(a); *Trimm v. Kirkpatrick*, No. 9:18-CV-0287

---

[10] Unpublished decisions cited within this Report-Recommendation & Order have been provided to petitioner.

(MAD/TWD), 2018 WL 1322162, at *2 (N.D.N.Y. Mar. 14, 2018). Petitioner did not timely seek leave to appeal from the Appellate Division's affirmance of his conviction, and, as a result, pursuant to 28 U.S.C. §2244(d)(1)(A), his conviction became final thirty days later, on December 17, 2015. *See Crawford v. Costello*, 27 F. App'x 57, at *1 (2d Cir. 2001) (summary order) ("[i]n the instant case, [Petitioner] received notice that his appeal was rejected by the Appellate Division . . . After allowing thirty days to pass without seeking leave to appeal to [the] New York Court of Appeals, his conviction became final.") (citations omitted); *Gillespie v. Kaplan*, No. 9:12-CV-1276 (NAM/RFT), 2015 WL 5773424, at *4 (N.D.N.Y. Sept. 30, 2015) ("Petitioner received the Third Department's Memorandum and Order affirming her conviction . . . Petitioner's conviction became final [30 days later] on . . . the date in which she could no longer seek leave to appeal from the New York Court of Appeals.") (internal citations omitted). Petitioner had until December 17, 2016, to timely file his federal habeas corpus action. *Gillespie*, 2015 WL 5773424, at *4. The instant petition, filed on October 11, 2019, was submitted over two years and ten months past the expiration of the limitations period.

Equitable tolling applies only in "rare and exceptional" circumstances. *Smith*, 208 F.3d at 17. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citation omitted); *see also Smith*, 208 F.3d at 17.

> To show that extraordinary circumstances 'prevented' him from filing his petition on time, [P]etitioner must 'demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the [P]etitioner, acting with reasonable diligence,

could have filed on time notwithstanding the extraordinary circumstances.

*Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).  Here, Petitioner contends he was unable to timely file his petition because of the "egregious errors" of his counsel, which rendered him unaware that his judgment had become final.  *See* Traverse at 7-8.  Thus, the primary question before this Court is what effect, if any, Petitioner's counsel's failure to file the notice of appeal has on the timeliness of this Petition.

Petitioner received explicit assurance from his attorney that a leave application would be filed.  *See* SR at 185 (letter stating "I am in the process of drafting the leave application to the [C]ourt of [A]ppeals" dated November 20, 2015).  However, it was not. SR at 205 (affirming that counsel represented to petitioner that he would file an appeal, drafted said appeal, and then never filed it).

The Second Circuit has distinguished between "extraordinary" actions by an attorney, such as the failure to file a petition, do any research, or meet with a client, and "simple mistakes," holding the former may constitute "extraordinary circumstances" warranting equitable tolling, while the latter do not.  *See Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003) ("attorney error *normally* will not constitute the extraordinary circumstances required to toll the AEDPA limitations period . . . [but] at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary.") (emphasis in original).  "[I]n order to rise to the level necessary to constitute an 'extraordinary circumstance,' for purposes of tolling § 2254's limitation period, attorney negligence must be so egregious as to amount to an effective

9

abandonment of the attorney-client relationship." *Rivas v. Fischer*, 687 F.3d 514, 538 (2d Cir. 2012) (citing *Holland v. Florida*, 560 U.S. 631, 652-54 (2010)).

However, courts in this Circuit have found that the failure of a habeas petitioner's counsel "to file a leave application may indeed constitute abandonment of the attorney-client relationship, and thus may be considered an extraordinary circumstance." *Quizhpe v. Superintendent of Eastern Corr. Facility*, No. 7:21-CV-1709, 2022 WL 5202275, at *6 (S.D.N.Y. Aug. 22, 2022) (citing *United States v. Wright*, 945 F.3d 677, 684 (2d Cir. 2019)); *see also Tarafa v. Artus*, No. 1:10-CV-3870, 2013 WL 3778795, at *6 (S.D.N.Y. Mar. 11, 2013), *adopted as modified*, 2013 WL 3789089 (S.D.N.Y. July 18, 2013) (noting that where the petitioner merely *alleges* that he instructed counsel to file an appeal, without any concrete proof in the state court record, the "Petitioner's claim that his trial counsel failed to follow his purported instruction to file an appeal does not constitute an extraordinary circumstance."). Here, Petitioner's attorney not only failed to timely file the leave application, but marked Petitioner's case as closed, and did not discover this mistake until Petitioner inquired about the status of his appeal. *See* SR at 205 (affirmation of Phillip Rothschild). Accordingly, counsel's negligence was sufficiently egregious to amount to effective abandonment, and does constitute an "extraordinary circumstance" for AEDPA tolling purposes.

The more challenging question is whether, by waiting until January 9, 2017, to inquire about the status of his appeal, Petitioner could be said to be diligently pursuing his rights. Arguably, since Petitioner was relying on his attorney's representations and believed his state court remedies were still pending, his conviction was not final, and the statute of limitations period for a habeas action had not begun to accrue, he could be

said to be diligently pursuing his rights; however, the law is less settled in that regard.

*Compare Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable . . . This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice." (internal citations omitted)); *with Samo v. Keyser*, 305 F. Supp. 3d 551, 561 (S.D.N.Y. 2018) ("[I]t is reasonable to expect that [Petitioner] would make at least some effort within a year of the filing of the leave application to learn of the status of his request."); *Hanks v. Ekpe*, 04-CV-6215, 2007 WL 3077030, at *7 (W.D.N.Y. Oct. 19, 2007) ("Because [the Petitioner] 'certainly could have inquired about the status of his appeal' between March 2002 and November 2002, the time he wishes to have tolled, he 'cannot use his own lack of diligence to toll the statute of limitations.'" (citing *Warren v. Kelly*, 207 F. Supp.2d 6, 11 (E.D.N.Y. 2002)).

Although the undersigned acknowledges that Petitioner had received assurance from his attorney that he would draft and file leave to appeal to the Court of Appeals and determines that it was reasonable, at the time, for Petitioner to rely on his attorney to file the leave application, it cannot be said that Petitioner had been "diligently pursuing his rights" for the full duration of time between receiving counsel's assurance and inquiring about the appeal's status over one year later.  In his November 20, 2015, letter, counsel indicated that "[Petitioner] should receive [the leave application] *shortly*."  SR 185. Petitioner did not receive any indication that an application for leave had been filed, because, unbeknownst to Petitioner, it had not been filed, yet Petitioner did not contact

his attorney about his application for leave until January 9, 2017. *See* SR at 205 (affirmation of Phillip Rothschild); Dkt. No. 1-1 at 8.

In *Samo*, the Court rejected the argument that a habeas Petitioner may simply wait to hear from his attorney as to the disposition of a leave application, as it is the Petitioner who is responsible for complying with the deadline to file a habeas corpus petition. *See* 305 F. Supp. 3d at 561. There, the Court found that it was reasonable to expect a Petitioner to make "at least some effort *within a year of the filing of the leave application* to learn of the status of his request." *Id*. (emphasis added). Applying *Samo*'s reasoning, it would be reasonable here to expect Petitioner to have inquired about the status of his application to the Court of Appeals far sooner than he did. Further, Petitioner "certainly could have inquired about the status of his appeal between" November 2015, when he received counsel's letter, and January 2017, when he actually wrote to counsel. *Hanks*, 2007 WL 3077030, at *7 (finding the petitioner was not diligently pursuing his rights between March 2002, when he received notice the Appellate Division rejected his appeal and Petitioner's attorney informed the petitioner he could seek permission to appeal from the Court of Appeals, and November 2002, when the petitioner discovered counsel had not filed a leave application, therefore, equitable tolling was not warranted.) (internal quotations and citation omitted).[11]

---

[11] Petitioner argues "it was not unreasonable . . . that he had not inquired about the stat[us] of his [leave application] sooner" because "[Petitioner] remained incarcerated for approximately one year following the receipt of appellate counsel[']s letter dated November 20, 2015[.]" The mere fact that Petitioner was incarcerated does not impact his obligation to diligently pursue his rights. *See, e.g., Kellogg v. Strack*, 269 F.3d 100 (2d Cir. 2001) ("[Petitioner]'s bare assertions that the conditions of his confinement prevented him from filing . . . earlier are insufficient to excuse the delay.") (citing *Jones v. Phipps*, 39 F.3d 158, 163-64 (7th Cir.1994) (enduring ordinary hardships of incarceration does not excuse failure to respond within a reasonable time)).

In sum, although it *initially* was reasonable for Petitioner to rely on his attorney's representation that an application for leave would be filed, he was still obligated to pursue his rights diligently.  Petitioner cannot demonstrate he acted diligently throughout this period as it was not reasonable to wait over one year after counsel informed him that an application for leave would be filed to inquire about the status of that application, given that he received no further communication from his attorney or the court at any point following counsel's assurance.

Finally, the closest portion of the analysis is whether counsel's error served as a causal connection for Petitioner's untimely filing.  Courts in this Circuit have rejected similar arguments for equitable tolling, finding the attorney's error did not *cause* the petitioner's own failure to timely file a habeas petition.  *See Tarafa,* 2013 WL 3778795, at *6 ("[P]etitioner's attorney's alleged failure to file a promised appeal did not necessarily foreclose petitioner's own efforts at filing a habeas petition nor did it cause [the habeas] petition to be untimely."); *Craig v. Connolly*, No. 15-CV-384 (GLS/CFH), 2016 WL 7993378, at *3 (N.D.N.Y. Dec. 6, 2016), *report and recommendation adopted*, 2017 WL 375662 (Jan. 26, 2017) (holding that the failure of a petitioner's attorney to file a notice of appeal "would bear no causal connection to petitioner's independent failure to timely file a habeas petition . . . . ").  This is because "[a]n attorney's failure to file a promised appeal is distinct from an attorney's failure to file a promised habeas petition . . . . " *Tarafa*, 2013 WL 3778795, at *6.  In other words, even where a petitioner establishes an "'extraordinary circumstance' warranting equitable tolling," they may be unable to also show "that [the] extraordinary circumstance *prevented* him from filing a timely habeas petition." *Hizbullahankhamon*, 255 F.3d at 76 (emphasis in original).

The facts of the above-cited cases are not as convincing as those in the instant action, given the representations of counsel to Petitioner regarding the status of the appeal and counsel's actions after discovering his failure to file said appeal.  However, despite counsel's letter, Petitioner has not demonstrated that his attorney's representation that an application for leave would be filed on Petitioner's behalf prevented Petitioner from filing a separate and independent federal habeas corpus action.  Put another way, if Petitioner had acted with reasonable diligence, he would have discovered no appeal had been filed, and could have timely filed the instant Petition despite his attorney's failure to file the leave application.  *See id.* at 75.

Accordingly, even accepting Petitioner's argument that his attorney's mistake qualified as an extraordinary circumstance, and assuming Petitioner had acted diligently despite waiting fourteen months to follow up on the status of his appeal, the undersigned concludes that the attorney error does not provide the causal connection necessary to entitle petitioner to equitable tolling.  Therefore, equitable tolling does not save the instant petition.

## 2.  Alternate Accrual Date and Statutory Tolling

Alternatively, Petitioner's situation appears to entitle him to a "resetting" of the AEDPA deadline "based on his discovery of counsel's lapse, the 'factual predicate' for the ineffective assistance claim."  *Quizhpe*, 2022 WL 5202275, at *6 (discussing how a counsel's failure to file an appeal as the basis for an ineffective assistance of counsel claim can provide the petitioner with an alternate accrual date for the statute of limitations under 28 U.S.C. §2244(d)(1)(D)); *see also Shadid v. Nicolato*, No. 1:13-CV-5800, 2014 WL 3639169, at *2 (S.D.N.Y. July 23, 2014) ("When an attorney fails to file

a notice of appeal after making assurances that he would do so, the statute of limitations begins to run as of the date on which the petitioner should have learned of the lawyer's failure.") (citing cases).

The question then becomes "when, in exercising due diligence, [Petitioner] would have discovered his counsel's failure to appeal." *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000).  Although the Second Circuit failed to articulate a precise timeline for how long it should take a petitioner to discover that their counsel failed to file a notice of appeal, a five-month delay was deemed not so clearly unreasonable to represent a lack of diligence.  *See Yekimoff v. New York State Div. of Parole*, No. 1:02-CV-8710, 2004 WL 1542256, at *6 (S.D.N.Y. July 8, 2004) (citing *Wims*, 225 F.3d at 190-91).

Therefore, the limitations period would begin to accrue when Petitioner reasonably should have discovered that counsel did not file the appeal.  As previously noted, the Second Circuit deemed waiting five months to be reasonable but provided no further measure for when a petitioner should have reached out to inquire about the status of his appeal to remain diligent.  *See Wims*, 225 F.3d at 190-91.  The letter Petitioner received from counsel indicated that he would hear from his counsel – who would be providing him with a copy of the filed appeal – soon; however, that correspondence never came.  Thus, the Court must determine whether the almost fourteen months petitioner waited to inquire is too long to be considered due diligence in pursuing his rights, or, like the Supreme Court held in *Roe*,  Petitioner is entitled to rely on the representation of counsel that an appeal would be filed.  Interpreting Petitioner's

Traverse liberally to raise the strongest arguments suggested therein,[12] the undersigned concludes the latter.  Accordingly, the undersigned recommends that an alternative statutory limitations date apply, and the one-year limitations period not begin to accrue until January 20, 2017, the date the application for corium nobis relief was filed.

Subsequently, the limitations period would have been statutorily tolled the moment an application for corium nobis relief was filed on Petitioner's behalf.  *See* 28 U.S.C. § 2244(d)(2).  Although Respondent correctly identifies that collateral proceedings do not toll the limitations period when those proceedings are filed *after the expiration of the limitations period*,[13] applying the alternate accrual date, the application for corium nobis was not filed "after the expiration of the limitations period," but was filed concurrently with the commencement of the limitations period.  The limitations period remained statutorily tolled until the Court of Appeals finally disposed of the corium nobis application, on October 23, 2018.  *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation . . . . ").

The limitations period ceased tolling, and resumed accruing, on October 23, 2018, at which point 365 days remained.  Therefore, Petitioner was required to file the

---

[12] *See, e.g., Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("Because [Petitioner] is a *pro se* litigant, we read his supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.") (citation omitted).

[13] *See, e.g., Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *Morales v. Bradt*, 11-CV-00329, 2013 WL 600176, at *3 (W.D.N.Y. Feb. 11, 2013) ("Petitioner's state collateral proceedings did not [] toll the statute of limitations, as [] his coram nobis application [] [was] filed after the [] deadline had already expired."); *Hale v. Sabourin*, No. 9:08-CV-0768 (LEK/DEP), 2010 WL 2105934, at *3 (N.D.N.Y. May 4, 2010), *report and recommendation adopted*, 2010 WL 2044685 (N.D.N.Y. May 24, 2010).

instant petition by October 23, 2019, for it to be deemed timely.  Because Petitioner filed his petition on October 11, 2019, it was timely.

Accordingly, the undersigned turns to the petition's merits.

### 3. Ineffective Assistance of Appellate Counsel

Petitioner first argues that he was deprived of the effective assistance of appellate counsel because his attorney failed to timely file his request for leave to appeal the Appellate Division's affirmance of his conviction to the Court of Appeals.  Pet. at 6-8; Dkt. No. 1-1 at 10-21.  Respondent contends this claim is unexhausted and plainly meritless.  Dkt. No. 17-1 at 15-17.[14]

Petitioner argues that because New York provides appellate review of criminal convictions by statute, the due process clause requires the provision of counsel, and that counsel be effective.  Dkt. No. 1-1 at 11-12 (citing CPL §§ 460.10(1); 460.20).  The Supreme Court has held that a petitioner's "right to counsel is limited to the first appeal as of right."  *Hernandez v. Greiner*, 414 F.3d 266, 269 (2d Cir. 2005) (quoting *Evitts v. Lucey*, 469 U.S. 387, 394 (1985)).  Further, the Supreme Court has also ruled there is no constitutional right to counsel to pursue discretionary appeals.  *See Chalk v. Kuhlmann*, 311 F.3d 525, 528 (2d Cir. 2002) (citing *Ross v. Moffitt*, 417 U.S. 600, 610-11 (1974)).  "In criminal matters in New York state, the Court of Appeals retains discretionary authority to grant leave to appeal; there is no appeal as of right to that court."  *Stephanski v. Superintendent of Upstate Corr. Facility*, 433 F. Supp. 2d 273, 288 (W.D.N.Y. 2006) (citing N.Y. Const. art. VI, § 3(b); CPL §§ 450.90, 460.20).  In sum, although New York permits appellants such as Petitioner to apply for leave to

---

[14] Because the Court finds that Petitioner's ineffective assistance of counsel claim is subject to dismissal on the basis that it is meritless, Respondent's other ground for denial need not be considered.

appeal to the Court of Appeals, "[t]he appellant has no right to have his appeal heard by the Court of Appeals." *Chalk*, 311 F.3d at 528.

The Supreme Court has specifically held that habeas relief may not be granted based on a claim that a petitioner's counsel failed to timely file an application for discretionary review to the state's highest court. *See Wainwright v. Torna*, 455 U.S. 586, 587 (1982); *see also Chalk*, 311 F.3d at 528 (2d Cir. 2002) ("[A] writ of habeas corpus cannot be premised on a claim of ineffective assistance of counsel based on counsel's failure to file a timely application for leave for a discretionary appeal.") (discussing *Wainwright*). Accordingly, Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim. *See, e.g., Buchanan v. Chappius*, No. 9:15-CV-0407 (LEK), 2016 WL 1049006, at *9 (N.D.N.Y. Mar. 11, 2016) ("Petitioner's claim of ineffective assistance relates solely to his appellate counsel's alleged failure to seek leave to pursue a discretionary appeal to the New York State Court of Appeals. Habeas relief, however, is not available for such claims.").[15]

### 4. Fourth Amendment

Petitioner's second claim is that the trial court erred in refusing to conduct a suppression hearing. He contends that because the police lacked probable cause to stop the car in which Petitioner was a passenger, the subsequent search of his person was improper. *See* Dkt. No. 1-1 at 21-24.

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal

---

[15] *See also Dominique v. Artus*, 25 F. Supp.3d 321, 339-40 (E.D.N.Y. 2014)
> Petitioner cannot have [been] deprived of effective assistance of appellate counsel on his discretionary appeal to the Court of Appeals because "even if his attorney's performance did not conform to minimum standards, this failure would not violate any constitutional right, and could not serve as the basis for overturning his conviction on application for habeas corpus under Section 2254."

(citations omitted).

> defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *accord, Class v. United States*, 138 S. Ct. 798, 804-05 (2018).  Petitioner does not suggest, and there is nothing in the state court record reflecting, that any police misconduct or violation of his Fourth Amendment rights during the arrest undermined the validity of his guilty plea.  Accordingly, petitioner's plea forecloses the availability of this claim on habeas review, and this claim is, therefore, denied and dismissed.  *See, e.g., Haring v. Prosise*, 462 U.S. 306, 321 (1983) ("[W]hen a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized.").[16]

### 5.  Adjudication as a Second Felony Drug Offender

Finally, Petitioner argues the sentencing court improperly adjudicated him a second felony drug offender, in violation of CPL § 400.21.  *See* Pet. at 13-15; Dkt. No. 1-1 at 25-28.  He contends the trial court's failure to ask him if he wished to controvert the existence and constitutionality of the prior felony violated "constitutional muster." Pet. at 13-15; Dkt. No. 1-1 at 25-28.  Respondent asserts this claim is unexhausted and procedurally defaulted; barred from habeas review on independent and adequate state law grounds; and noncognizable.  *See* Dkt. No. 17-1 at 20-24.

---

[16]  Because the undersigned recommends that Petitioner's Fourth Amendment claim is subject to dismissal on the basis that is not cognizable in light of his valid guilty plea, Respondent's other grounds for denial need not be considered.

On January 5, 2012, Petitioner, represented by counsel, appeared before the trial court to enter a plea of guilty.  *See* T. at 233-42.  Petitioner admitted he had been previously convicted "upon a plea of guilty to criminal possession of a weapon in the third degree" and sentenced to "two years determinate, plus [] one and a half years [of post-release supervision]."  T. at 238.  The Appellate Division found that Petitioner's claim that he was not given the opportunity to contest the constitutionality and existence of a prior felony was not properly preserved for review and lacked merit.  The court explained:

> [Petitioner] contends that [the] Supreme Court failed to make a proper finding of a prior felony conviction pursuant to CPL 400.21 inasmuch as the court failed to ask him whether he wanted to controvert any of the allegations set forth in the CPL 400.21 statement. That contention is not preserved for our review (*see People v Pellegrino*, 60 NY2d 636, 637 [1983]; *People v Butler*, 96 AD3d 1367, 1368 [2012]), and is without merit in any event. [Petitioner] admitted the prior felony conviction in open court during the plea hearing and, thus, he waived strict compliance with CPL 400.21 (*see People v Vega*, 49 AD3d 1185, 1186 [2008], *lv denied* 10 NY3d 965 [2008]). Moreover, although the court did not formally ask [Petitioner] whether he wished to controvert any of the allegations set forth in the CPL 400.21 statement, the record establishes that [Petitioner] had an opportunity to do so (*see People v Hughes*, 28 AD3d 1185, 1185 [2006], *lv denied* 7 NY3d 790 [2006]; *see also People v Irvin*, 111 AD3d 1294, 1297 [2013], *lv denied* 24 NY3d 1044 [2014], *reconsideration denied* 26 NY3d 930 [2015]). Thus, under the circumstances, we conclude that there was the requisite substantial compliance with CPL 400.21 (*see Irvin*, 111 AD3d at 1297; *Hughes*, 28 AD3d at 1185).

*Grimes*, 20 N.Y.S.3d at 262-63.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the

United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."). "Whether a New York court erred in applying a New York recidivist sentencing enhancement statute is a question of New York State law, not a question of fact." *Saracina v. Artus*, 452 F. App'x 44, 46 (2d Cir. 2011) (summary order).  Accordingly, Petitioner's claim that he was improperly adjudicated as a second felony offender is not cognizable on habeas review.[17]  *See Sudler v. Griffin*, No. 9:12-CV-0367 (NAM/ATB), 2013 WL 4519768, at *9 (N.D.N.Y. Aug. 26, 2013) ("Petitioner's claim that the trial court improperly sentenced him as a second felony offender is noncognizable."); *Coons v. Superintendent*, No. 9:11-CV-1502 (NAM/CFH), 2014 WL 316757, at *11 (N.D.N.Y. Jan. 28, 2014) (holding Petitioner's claim "that he was illegally sentenced as a [persistent felony offender] under CPL § 400.20 . . ." was "not cognizable on habeas review."); *Williams v. Superintendent*, No. 9:17-CV-0380 (JKS), 2018 WL 4567108, at *6 (N.D.N.Y. Sept. 24, 2018) (holding same as *Sudler*).

## V.    CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the petition, Dkt. No. 1, be **DENIED and DISMISSED** in its entirety; and it is further

---

[17] Because the Court finds that Petitioner's challenge to his adjudication as a second felony drug offender is subject to dismissal on the basis that is not cognizable on habeas review, Respondent's other grounds for denial need not be considered.

**RECOMMENDED**, that no Certificate of Appealability ("COA") shall issue because petitioner has failed to make a substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[18] and it is further

**RECOMMENDED**, that any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is

**ORDERED**, that the Clerk shall serve a copy of this Report-Recommendation and Order upon the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[19]

Dated: November 10, 2022
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[18] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).

[19] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).